RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 06a0095p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,

       *Plaintiff-Appellee,*

   *v.*

MARTEZ D. MATTHEWS,

       *Defendant-Appellant.*

No. 04-6398

>

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 04-00001—Thomas B. Russell, District Judge.

Argued: January 31, 2006

Decided and Filed: March 14, 2006

Before: RYAN, CLAY, and GILMAN, Circuit Judges.

---

**COUNSEL**

**ARGUED:** Jane E. Lee, Portland, Maine, for Appellant. Amy M. Sullivan, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellee. **ON BRIEF:** Jane E. Lee, Portland, Maine, for Appellant. Amy M. Sullivan, Terry M. Cushing, Monica Wheatley, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

---

**OPINION**

---

RONALD LEE GILMAN, Circuit Judge. Martez Matthews was convicted of possessing five grams or more of crack cocaine with the intent to distribute, in violation of 21 U.S.C. § 841(a)(1), and of using, possessing, and brandishing a firearm during and in relation to a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(ii). He was sentenced to a total of 162 months of imprisonment and 4 years of supervised release. On appeal, he asserts errors relating to the admission of evidence of prior uncharged drug sales, the instructions to the jury regarding this prior-drug-sale evidence, and the lawfulness of his sentence. The government concedes that Matthews should be resentenced in accordance with *United States v. Booker*, 543 U.S. 220 (2005). For this reason and for the reasons set forth below, we **AFFIRM** Matthews's convictions, but **VACATE** his sentence and **REMAND** the case for resentencing.

1

## I.    BACKGROUND

### A.    The February 6, 2003 incident in Paducah, Kentucky

On February 6, 2003, the city of Paducah, Kentucky was blanketed with fresh snow.  At around 6:00 a.m. that morning, Matthews was cleaning the snow from his car, which was parked on the street.  He later told the police that while he was cleaning off his car, he saw something "shiny like" in the street, realized that it was a bag of something, picked it up, and put it in his pocket.

Matthews contends that at some point later that morning, an acquaintance named Terry Jones tried to rob him at gunpoint.  At trial, Matthews's neighbor Brenda Jones testified that she heard men yelling outside and she looked out to see what was going on.  She said that she "saw one man [who turned out to be Matthews] running north . . . and his back was to me, but I saw that he had a gun in his hand and was yelling something at the other gentleman."  When asked what Matthews yelled, she said: "[Y]ou're a dead man.  You're dead."  Five minutes after calling 911 the first time and giving a description of what had happened, she called back to report that Matthews was now standing on the street corner with another man, Donald Martin.  Martin testified that he was just returning from work that morning and witnessed part of the incident.  Although he did not see anyone running away from Matthews, he did see Matthews with a gun and heard someone yell, "Don't shoot."

The police soon arrived and saw Matthews and Martin talking on the street corner.  After the officers asked the two men which of them had the gun, Matthews responded that he did.  The officers then confiscated the weapon, which was a loaded nine millimeter handgun with a bullet in the chamber.  Matthews was arrested for carrying a concealed weapon without a license and was taken to the police station.  At the station, a search of Matthews's person revealed that he was carrying $8,409 in cash, a pager, a box cutter, keys, and a clear bag containing 18.3 grams of crack cocaine.

Matthews, in an attempt to account for the money, produced copies of a tax-refund check and an insurance-proceeds check, both of which he had recently cashed.  As for why he had the money in his pockets in the early morning hours, he said that he was going to buy a car because his was recently wrecked.  This was partially confirmed by an officer who testified that Matthews in fact had a car that was wrecked in early November of 2002, and that he had received a check from the insurance company later that month.  On the other hand, the officer's investigation showed that Matthews had already purchased a new vehicle shortly after receiving the insurance check.  With regard to the handgun, the government confirmed Matthews's story that he purchased it two days earlier, a purchase that Matthews argued was prompted by an attempted break-in at his home.  Matthews supported this defense by introducing a tape of the 911 call that he had made to report the attempted burglary.  As for the cocaine, Matthews said that he had picked up the bag off of the street by his car and that at the time he did not know that the bag contained crack cocaine.  The jury obviously disbelieved Matthews's various explanations and found him guilty as charged.

### B.    Pretrial consideration of Matthews's alleged prior drug sales

Prior to trial, the government filed a notice pursuant to Rule 404(b) of the Federal Rules of Evidence that it intended to introduce evidence that Matthews had engaged in prior drug deals.  The notice stated that "[t]he evidence consists of testimony from a witness that has previously purchased crack cocaine from the defendant on several occasions and that he has seen [Matthews] carry a weapon while carrying out drug deals."  Matthews filed a written objection to the notice based upon a lack of specificity and for a failure to state the relevance of the evidence under Rule 404(b).

The district court held a telephonic hearing on the matter.  In a written order containing a "provisional determination," the court stated:

> The pleading and hearing indicate that the government has a witness who purchased crack cocaine from the defendant on at least one occasion within two years of the current charges. This witness will also state that he observed the defendant sell crack cocaine to others during the time frame. In addition, the witness will state that defendant possessed a firearm in furtherance of the drug activity.

The district court noted that Matthews was charged with a specific-intent drug crime and with knowingly possessing a firearm in furtherance of a drug-trafficking crime. To support the admission of the evidence, the government identified the purpose of the evidence as demonstrating Matthews's intent and knowledge regarding the charged crimes. The court found that "the evidence is more probative than prejudicial under [Rule] 403" and stated that a limiting instruction would be given. As for the issue of specificity, the court said that "the government must provide more information in its notice." That information "[a]t the very least" was to include "the same degree of particularity that normally is present in an indictment[,] . . . includ[ing] a more exact time frame and location."

Eight days after the district court issued its order, the government's counsel submitted a letter to Matthews stating that "to the best of my knowledge at this time, the time period of the events described in the notice and on the record, occurred in 1996 in Paducah, Kentucky." Matthews was thus informed that instead of the alleged sales being potentially two years old, they were over eight years old. Matthews's counsel again filed written objections to the introduction of the evidence.

On the first day of trial, the court ruled on Matthews's renewed objection to the Rule 404(b) evidence. The government confirmed that the evidence would show that the prior drug sales occurred in "'95, '96, one or the other." After the district court asked the government attorney several times about exactly what the witness would testify to, the final explanation was that the witness was "going to say that he purchased crack cocaine from the defendant, and then he witnessed that the defendant had—was in the possession of a firearm at that time. Now, later on during the course of the year, and maybe four or five years ago, he said he's seen the defendant with a firearm playing, you know, basketball, that—you know, he knew him to carry it in his car."

The district court stated: "I'm not going to have you introduce any of that evidence" because the court reasoned that any sighting of Matthews possessing a gun while playing basketball was not relevant to the charge of using a firearm in relation to drug trafficking. As for the prior drug transaction, the district court stated: "I'm a little troubled by it. I'm not real firm on what I want to do on it. I want to hear all the evidence in the case first to . . . do a little balancing on it." The court was bothered by the change in the dates of the alleged prior sales and thought that the two-year time frame was rather broad. In the end, the court stated that it would wait until the close of the government's case to decide whether to admit the Rule 404(b) evidence or whether to allow it on rebuttal. The government responded that it intended to use the evidence only on rebuttal for the purpose of proving Matthews's knowledge and intent.

## C.    The trial

Trial then began on Matthews's drug and gun charges. Evidence of the alleged prior drug sales came in at trial in two different ways. One was by the government's cross-examination of a defense character witness about whether she had heard about the prior drug activity. The other was by the government's rebuttal witness who testified that he had purchased cocaine from Matthews in the past. Matthews objects on appeal to the use of both categories of evidence, as well as to the district court's instructions to the jury on how it could use the evidence of his prior drug sales.

### 1.      *The government's cross-examination of witness Beverly Hodges*

Beverly Hodges was called as Matthews's first witness.  Hodges had known Matthews since the fourth grade and voluntarily flew from New Mexico to testify on his behalf.  The basic substance of her testimony was that she had been in a relationship with Matthews, that she lent him $4,500 to buy the car that he had wrecked and for which he had received the insurance check, and that she had sold him another car for $25 in what essentially amounted to a gift.

On direct examination, the following exchange took place between Matthews's counsel and Hodges:

Q.      Why were you willing to come all this way, if I might ask?

A.      Because he's a good person and, you know, I've never known him to do anything to get in trouble or anything like that or to do any illegal activities. And I, I don't believe the charges that are against him.

Q.      Would you come all this way for somebody you thought to be a big drug dealer?

A.      Oh gosh, no.  No.

On cross-examination, the government's attorney requested a sidebar and indicated her intent to ask questions about Matthews's prior drug transactions.  The court noted that the witness had testified that she had "never known him to be in any illegal activity and didn't believe the charges against him," and then ruled that the government "can ask her if she knows that he sold crack cocaine in 1995."

After the sidebar, the following exchange took place between the government attorney and Hodges:

Q.      Did you know that—were you aware of his drug dealing activities in 1995 and 1997?

A.      No.

Q.      Were you aware that he sold crack cocaine in 1995 and 1997?

A.      No.

Matthews's counsel objected to the form of the questions because they "basically suggest[ed] that it's a fact."  The court overruled the objection.

### 2.      *The government's examination of rebuttal witness Ricky Arnold*

Near the end of Matthews's presentation of evidence, the district court asked the government: "You've got the [Rule] 404(b), right?" Counsel for the government responded that she had two rebuttal witnesses, one of whom was Ricky Arnold.  After the defense rested, and as the government was about to call Arnold as a witness, Matthews renewed his motion to exclude the prior-drug-sale evidence on the same grounds previously raised.  The court denied the renewed motion without elaboration.

Arnold testified that "Mr. Martez [Matthews] is a crack dealer, and I bought a $20 rock from Mr. Martez."  As for when this transaction occurred, the evidence was less than clear.  Arnold said

that it was when Matthews lived on Elmwood Court, which Arnold thought was "[a]bout ten years ago." But the Elmwood Court property manager testified that Matthews lived there from March of 1999 until February of 2002. Arnold also said that he made this purchase before he went to prison. He first went to prison for a short period beginning in 1996 and, after violating his parole, from 1998 through 2000. Defense counsel cross-examined Arnold on the issue of when the transaction took place because Arnold did not live at Elmwood Court prior to 1996. Arnold was asked: "And so your belief and your testimony is that my client was living in Elmwood Court before 1996?" He responded: "Yes." After Matthews's lawyer asked him if he was sure, Arnold said that "I don't track back years, sir. It was before I went to the penitentiary. That's for sure."

On cross-examination, Arnold was also asked about his prior statement to a government agent that he had bought crack from Matthews a *few* times. Arnold said that "most of the times when people don't deal with people, people send other people to them. . . . [Y]ou send someone else you get a better quantity. You get more." He then clarified that he sent someone else with his money to purchase the drugs from Matthews in order to get more for his money.

### 3. *The jury instructions*

The district court did not instruct the jury as to the proper use of the prior-drug-sale evidence directly following the cross-examination of Hodges or directly after Arnold testified. Instead, at the close of the case, the court gave the jury the following instructions on how it could use the evidence of the alleged prior drug sales:

> Number 17. You've heard the testimony that the defendant committed some other acts other than the ones charged in the indictment.
>
> You cannot consider this testimony as evidence that the defendant committed the crime that he's on trial for now. Instead, you can only consider it in deciding whether the defendant had knowledge or intent to commit the crimes charged in counts 1 or 2 of the superseding indictment. Do not consider it for any other purpose.
>
> Remember that the defendant is only on trial here for the crimes charged in count 1 and 2 of the superseding indictment, not for the other acts. Do not return a guilty verdict unless the government proves the crimes charged beyond a reasonable doubt.

The instruction given by the district court is similar to Sixth Circuit Pattern Jury Instruction 7.13, which reads as follows:

> (1) You have heard testimony that the defendant committed [crimes, acts, wrongs] other than the ones charged in the indictment. If you find the defendant did those [crimes, acts, wrongs], you can consider the evidence only as it relates to the government's claim on the defendant's [intent, motive, opportunity, preparation, plan, knowledge, identity, absence of mistake, absence of accident]. You must not consider it for any other purpose.
>
> (2) Remember that the defendant is on trial here only for _____, not for the other acts. Do not return a guilty verdict unless the government proves the crime charged in the indictment beyond a reasonable doubt.

The use note to the pattern instruction states that "[t]his instruction should be given when the evidence is introduced and at the end of the case as well."

## II.   ANALYSIS

### A.   The government's cross-examination of Hodges

Matthews raises four claims of error regarding the cross-examination of Hodges: (1) that she was not in fact testifying as a character witness, (2) that the questions were erroneously phrased, (3) that the district court never determined that the prior drug sales actually occurred, and (4) that the government had no factual basis to believe that Matthews sold crack cocaine in both 1995 and 1997.  These claims will be addressed in turn.

### 1.  Whether Hodges was in fact testifying as a character witness

Because Matthews did not object on this ground below, we will apply the "plain error" standard of review.  *United States v. Evans*, 883 F.2d 496, 499 (6th Cir. 1989) ("[W]hen a party fails to object to evidence at the trial court, his contention on appeal will prevail only if the trial court's evidentiary decision was plainly erroneous . . . .").

The plain-error inquiry is a four-step process under Rule 52(b) of the Federal Rules of Criminal Procedure:

> First, we are to consider whether an error occurred in the district court.  Absent any error, our inquiry is at an end.  However, if an error occurred, we then consider if the error was plain.  If it is, then we proceed to inquire whether the plain error affects substantial rights.  Finally, even if all three factors exist, we must then consider whether to exercise our discretionary power under Rule 52(b), or in other words, we must decide whether the plain error affecting substantial rights seriously affected the fairness, integrity or public reputation of judicial proceedings.

*United States v. Thomas*, 11 F.3d 620, 630 (6th Cir. 1993) (interpreting the Supreme Court's decision in *United States v. Olano*, 507 U.S. 725 (1993)); *see also United States v. Jones*, 108 F.3d 668, 670 (6th Cir. 1997) (en banc) (following *Thomas*'s division of the plain-error inquiry into "four distinct, though interrelated, analyses").

As to Matthews's claim that Hodges was not a character witness, he does not clear the first hurdle of plain-error review.  This court has considered testimony similar to that of Hodges's to constitute character evidence.  *See United States v. Green*, 305 F.3d 422, 431 (6th Cir. 2002) (treating witness testimony that Green had "good character" and was a "law-abiding citizen" as character evidence).  In this case, Hodges testified that Matthews was a "good person" and that she had "never known him to do anything to get in trouble . . . or do any illegal activities."  There is no practical difference between saying that the defendant in *Green* had "good character" and was a "law-abiding citizen" and Hodges saying in the present case that Matthews was a "good person" who "never [did] . . . anything . . . illegal."  We thus find no error in the district court treating Hodges as a character witness under Rule 405 of the Federal Rules of Evidence.

### 2.     Whether the phrasing of the question impermissibly suggested that the prior conduct definitely occurred

Matthews's second and third claims regarding the cross-examination of Hodges are so closely related that they will be addressed together.  Unlike the preceding claim made by Matthews, his trial counsel *did* object to the form of the question put to Hodges because the form suggested that the prior drug sales in fact occurred.  The typical standard of review for evidentiary issues therefore applies, as opposed of the plain-error standard above.  That is, we will reverse on the issue of the propriety of questions put to a character witness on cross-examination "rarely and only on [a] clear

showing of prejudicial abuse of discretion." *United States v. Frost*, 914 F.2d 756, 772 (6th Cir. 1990) (quoting *Michelson v. United States*, 335 U.S. 469, 480 (1948)).

This court in *Green* held that once the defendant testified that he was a "law-abiding citizen," the government could cross-examine him regarding a past specific act of misconduct that would undermine his claim. *Green*, 305 F.3d at 431; *see also United States v. Lewis*, No. 90-3604, 1991 WL 43903, at *8 (6th Cir. March 29, 1991) (unpublished) (allowing the government to cross-examine the defendant about a prior purchase of a kilogram of cocaine because the defendant had "opened the door" by testifying that he was a law-abiding citizen). Such cross-examination of a character witness is specifically provided for in Rule 405(a) of the Federal Rules of Evidence ("On cross-examination, inquiry is allowable into relevant specific instances of conduct" after opinion or reputation evidence has been offered on direct examination).

As to the form of the question, the Advisory Committee Notes to Rule 405 allow cross-examination of a character witness in the form of "whether he knew as well as whether he had heard." Fed. R. Evid. 405 advisory committee's note. *See also Green*, 305 F.3d at 431 (concluding that the district court did not abuse its discretion by allowing the government to ask two witnesses who had vouched for Green as a "law-abiding citizen" whether they "were aware of an alleged seizure of $18,000 from Green at the Atlanta airport in 1979").

Matthews's remaining challenge to the form of the question put to Hodges essentially attacks the government's factual basis for asking the question, and whether the district court properly determined that the incident actually occurred. This court has held that the better practice is for a district court to conduct an independent voir dire to determine the factual basis for a cross-examination question of this sort. *United States v. Reese*, 568 F.2d 1246, 1249 (6th Cir. 1977) ("[W]e hold that the better practice would have been for the trial judge to have had a voir dire examination to determine whether there were actually such rumors before permitting the cross examination. This would avoid any random shots to the prejudice of the appellant."). With respect to the cross-examination of a character witness, this court in *United States v. Aronds*, No. 98-1990, 2000 WL 303003, at *10 (6th Cir. March 14, 2000) (unpublished) (citing *United States v. Monteleone*, 77 F.3d 1086, 1089-90 (8th Cir.1996)), stated:

> [B]ecause this type of evidence is especially susceptible to abuse and could produce a result most prejudicial to the defendant, the government must meet two important requirements before utilizing this type of questioning. First, the government must demonstrate a good-faith factual basis for the incidents raised during cross-examination of the witness. Secondly, the incidents inquired about must be relevant to the character traits at issue in the case.

In this case, the government's question was not a "random shot" at Matthews because, at the time the government posed the question to Hodges, the government had already interviewed its informant Arnold regarding his prior drug transactions involving Matthews, and had also planned to have Arnold testify on rebuttal. There was also no need for the district court to conduct an independent voir dire about whether the prior sales occurred because the issue of Matthews's alleged prior drug activity had been fully explored in pretrial proceedings. This made the court acutely aware of the foundation for the government's belief that the drug transactions had in fact occurred, so much so that the court at one point asked the government in the midst of trial about its plan to introduce additional evidence of the prior drug sales. ("You've got the [Rule] 404(b), right?") In the context of the proceedings, such a question from the court clearly referred to the fact that the government planned to call as a witness the very individual who allegedly engaged in the drug transactions with Matthews. Under these circumstances, the district court did not abuse its discretion in concluding that the government had a good-faith factual basis for the cross-examination

of Hodges, nor in allowing the cross-examination question without referring to the prior conduct as a mere allegation (because Arnold was about to testify that the events did occur).

### 3. *Whether the government's statement as to the dates of the prior drug transactions requires reversal*

The government, in its cross-examination of Hodges, referred to Matthews's alleged drug activity in 1995 and again in 1997. Matthews complains that Arnold did not ultimately testify to these dates, and argues that Arnold was imprecise in his testimony about the time periods in which the transactions allegedly took place. He thus contends that the government, at the time of the cross examination, had an insufficient factual basis to believe that illegal conduct took place in both 1995 and 1997. Matthews, however, did not object on this ground below, so we will reverse only upon a finding of plain error. *See Evans*, 883 F.2d at 499.

On the first day of trial, the government told the court that the informant would testify that the drug sales took place in "'95, '96, one or the other." The court was thus reminded of the government's basis for any cross-examination regarding Matthews's prior drug activities. But when the cross-examination question was actually posed to the witness, the government used the dates "1995 and 1997." The government argues that the use of the 1997 date was simply a mistake on the part of its trial counsel. Even assuming this to be true, the government had already told the district court that the transactions occurred in either 1995 or 1996, not both. The court therefore erred in allowing the government to use the 1997 date and in allowing the government to imply by the question that the transactions took place in both 1995 *and* 1997. *See Aronds*, 2000 WL 303003, at *10 (setting forth the requirement of a good-faith factual basis for the cross-examination of a character witness). Matthews has thus satisfied the first step of the plain-error analysis. *Thomas*, 11 F.3d at 630.

Under the second step of the plain-error analysis, we must determine whether the error was "plain." *Id.* In order to be "plain," an error must be "clear" or "obvious." *Id.* Here the requirement that the government have a good-faith factual basis for cross-examining a character witness regarding specific instances of conduct was both clear and obvious at the time of trial. *See Aronds*, 2000 WL 303003, at *10 (setting forth the requirement of a good-faith factual basis).

Although the first two steps of the plain-error analysis are satisfied, the third is not. In deciding whether the error affected Matthews's substantial rights, the inquiry is whether the error "affected the outcome of the district court proceedings." *United States v. Cotton*, 535 U.S. 625, 632 (2002) (citation and quotation marks omitted). We conclude that the addition of the "1995 and 1997" language in the government's question did not affect the outcome of the case in light of the fact that the informant actually testified on rebuttal, thus putting direct evidence of the prior drug sales before the jury. Because, as set forth below, the district court properly admitted the prior-drug-transaction evidence on rebuttal, we are satisfied that any error in cross-examining Hodges about the incidents did not affect the final verdict. Matthews has thus failed to satisfy the third step of the plain-error analysis. *See Evans*, 883 F.2d at 499.

## B. The admission of the prior-drug-sale evidence through rebuttal witness Arnold

Matthews also argues that Arnold's rebuttal testimony was an impermissible attempt to introduce extrinsic evidence of prior bad acts to undercut the character testimony offered by Hodges. This argument assumes that the prior-drug-sale evidence was admissible, if at all, only in the form of cross-examination questions put to Hodges, and was not admissible on any other theory or through any other witness's testimony. In fact, however, Matthews's prior drug sales came before the jury twice on two separate evidentiary theories. The first occasion was the cross-examination of Hodges, when the government asked whether she had heard of Matthews's earlier drug activity in an effort to test her knowledge and credibility. *See United States v. Monteleone*, 77 F.3d 1086,

1089 (8th Cir. 1996) ("This 'specific act' cross-examination of a defendant's reputation witness is allowed not for the purpose of proving that the defendant committed the particular bad acts, but rather is permitted so that the Government may test the knowledge and credibility of the witness.") (citation and quotation marks omitted).  As set forth above, this type of cross-examination is contemplated by Rule 405(a) of the Federal Rules of Evidence, and the trial court did not commit reversible error in allowing it.

The government subsequently called Arnold as a rebuttal witness to testify about the drug transactions for the different purpose of showing Matthews's knowledge and intent regarding the drug offense currently on appeal.  Rule 404(b) of the Federal Rules of Evidence allows the admission of evidence of other crimes, wrongs, or acts for purposes other than proving defendant's bad character.  Such permissible uses include proof of a defendant's knowledge or intent.  Fed. R. Evid. 404(b).  We must therefore decide whether the district court properly admitted Arnold's rebuttal under Rule 404(b).

Matthews objected to the admission of Arnold's testimony on multiple occasions: upon receiving the government's pretrial notice, after the government amended the information in that notice, on the first day of trial, and just before Arnold testified.  Because Matthews properly preserved this issue for appeal, the normal tripartite standard of review applies to our evaluation of the admission of the Rule 404(b) evidence:

> First, we review for clear error the district court's factual determination that sufficient evidence exists that the other acts occurred.  Second, we review de novo whether the district court correctly determined that the evidence was admissible for a legitimate purpose.  Third, we review for abuse of discretion the district court's determination that the "other acts" evidence is more probative than prejudicial under Rule 403.

*United States v. Comer*, 93 F.3d 1271, 1277 (6th Cir. 1996) (citations omitted).

### 1.     *The district court's factual determination that the prior drug sales occurred*

The Supreme Court in *Huddleston v. United States*, 485 U.S. 681, 689 (1988), held that "[e]vidence is admissible under Rule 404(b) only if it is relevant."  According to the Court, this relevancy standard requires that other-act evidence be admitted only if, after an examination of all the evidence in the case, the trial court concludes that the jury could reasonably find by a preponderance of the evidence that the act occurred and that the defendant was the actor.  *Id*. at 689-90.  This court has held that "[s]uch findings need not be express, but rather, may be implicit by virtue of the fact that the court admitted the evidence." *United States v. Alford*, No. 97-3977, 1999 WL 397946, at *1 (6th Cir. June 3, 1999) (unpublished) (citing *United States v. Jobson*, 102 F.3d 214, 220 (6th Cir.1996)).  The district court's conclusion that the government presented sufficient evidence for the jury to find by a preponderance of the evidence that Matthews had previously sold cocaine will not be set aside unless clearly erroneous.  *See Comer*, 93 F.3d at 1277; *Huddleston*, 485 U.S. at 689.

In this case, the district court was presented with a summary of Arnold's expected testimony before the trial began, and then witnessed his testimony when it occurred.  The record reflects ambiguity about the dates that Arnold purchased cocaine from Matthews.  There was also some confusion about how many times Arnold had purchased drugs from Matthews, and whether he had done so in person or through intermediaries.  Despite these shortcomings in the testimony, Arnold emphatically testified that he bought drugs from Matthews on at least one occasion before Arnold went to prison in 1996.  Given this testimony, we find no basis to believe the district court committed clear error when it concluded that Arnold's testimony constituted sufficient evidence for the jury to find by a preponderance of the evidence that such sales actually took place.

### 2.    *The purpose for which Arnold's testimony was offered*

Even if such prior drug sales did in fact take place, the evidence is admissible only if offered for a proper purpose under Rule 404(b). Evidence of a defendant's knowledge or intent regarding the current offense is such a proper purpose. Fed. R. Evid. 404(b). These are the precise uses enumerated by the government during its colloquy with the district court on the first day of trial.

The crime of possession with intent to deliver cocaine is a specific-intent crime, meaning that the defendant's intent is a statutory element of the offense. *United States v. Spikes*, 158 F.3d 913, 930 (6th Cir. 1998) ("Rule 404(b) evidence is admissible to prove intent if specific intent is a statutory element of the offense. Possession with the intent to distribute is such an offense.") (citations omitted). As such, the government was free to introduce the prior-drug-sale evidence in an effort to prove Matthews's intent to distribute the drugs that he possessed in the present case. *See id*. The district court therefore did not err in allowing the admission of the evidence for this purpose.

Matthews contends, however, that his awareness of what was in the clear plastic bag when he allegedly picked it up from the street was not an issue placed before the jury at the time Arnold testified. He instead points out that his videotaped statement to the police, wherein he denied knowledge of the bag's contents, was not played for the jury until *after* Arnold testified.

But contrary to Matthews's assertion on appeal, he did put his knowledge at issue before Arnold testified. In his counsel's cross-examination of Officer Robert Lee Estes, Jr. regarding statements that Matthews had made to the police, Estes was asked: "And Martez stuck to his story that he found a bag on the ground, he didn't know what it was and put it in his pocket, am I correct?" The officer responded in the affirmative. Matthews's cross-examination of Estes thus put before the jury Matthews's defense that he did not know what was in the bag. *See United States v. Jenkins*, 345 F.3d 928, 937 (6th Cir. 2003) (holding that Jenkins's defense that she did not know what was in a package she received put her knowledge at issue). Because knowledge was at issue in the present case, the government was free to introduce evidence of Matthews's prior drug sales in order to prove that he knew what cocaine looked like. The district court therefore did not err in allowing the admission of the evidence for this purpose.

### 3.    *The district court's balancing of probative value versus the danger of unfair prejudice under Rule 403*

Contrary to Matthews's assertion, the district court did not rule in his favor on the probative-value-versus-unfair-prejudice issue before trial. The court instead found that the evidence was more probative than prejudicial under Rule 403 of the Federal Rules of Evidence. Then, after the government revealed that the dates on which the alleged sales took place were more remote in time than originally represented, the court said that it would reserve a ruling and perform the required balancing after hearing the evidence in the government's case.

Finally, just prior to Arnold testifying, Matthews objected on the same Rule 404(b) grounds that he had previously raised. The district court overruled the objection and allowed Arnold to testify. Although the court did not explicitly reweigh the probative value of Arnold's testimony versus unfair prejudice, we will presume that it did so in light of the court's prior consideration of this issue. *See United States v. Miller*, 115 F.3d 361, 366 n.9 (6th Cir. 1997) ("An appellate court will presume that the balancing process and decision preceded the ruling allowing admission of the evidence.").

District courts have broad discretion in weighing prior-drug-sale evidence under Rule 403. *United States v. Bilderbeck*, 163 F.3d 971, 978 (6th Cir. 1999) ("It is well settled that a trial judge's discretion in balancing the probative value of evidence against its potential for unfair prejudice is very broad."). In this case, Matthews's defense was based on his claim that he did not know what

was in the bag, that he had just picked it up from the street, and that he therefore could not be guilty of the crime of possessing cocaine with the intent to deliver it. Despite Arnold's lack of precision in setting forth the dates of his prior drug purchases from Matthews, his testimony that he had in fact purchased cocaine from Matthews before Arnold went to prison in 1996 obviously had probative value in refuting Matthews's defense. The district court therefore properly concluded that such prior drug sales were probative on the issue of whether Matthews knew that the clear plastic bag found in his possession contained cocaine, as well as on the issue of whether Matthews intended to distribute the drug.

Matthews further argues that the alleged purchases took place so remotely in time that the probative value was diminished. Although the time that passed between the prior conduct and the charged conduct is a factor to be considered by the district court, this court has not adopted a bright-line rule concerning remoteness. *See United States v. Ismail*, 756 F.2d 1253, 1260 (6th Cir. 1985) ("Regarding the nearness in time question, the rule is that the prior conduct must be reasonably near in time under the facts of the particular case. There is no absolute maximum number of years that may separate a prior act and the offense charged.") (citations omitted). Because one of Matthews's defenses was that he simply did not know that the bag contained cocaine, the district court properly decided that even eight-year-old drug sales were probative as to whether Matthews could identify the contents of the bag as cocaine. We therefore conclude that the district court did not abuse its discretion in ruling that the probative value of the prior-drug-sale evidence was not substantially outweighed by the danger of unfair prejudice.

As set forth above, Arnold's testimony was properly admissible under Rule 404(b). We are therefore not persuaded by Matthews's argument that the evidence was an impermissible attempt to introduce extrinsic evidence of his prior bad acts in order to call into question Hodges's opinion that he was a law-abiding citizen.

## C.    The jury instructions regarding the evidence of prior drug sales

Matthews's final argument on this issue is that the district court failed to instruct the jury as to the permissible uses of Arnold's testimony at the time that Arnold testified. He did not object, however, to either the district court's failure to contemporaneously instruct the jury as to the permissible uses of Arnold's testimony or to the content of the instructions presented at the close of the case. We will therefore reverse only upon a finding of plain error. *See United States v. Trujillo*, 376 F.3d 593, 606 n.7 (6th Cir. 2004) (holding that because Trujillo failed to "lodge a timely objection to the district court's failure to instruct the jury contemporaneously with the admission of the Rule 404(b) evidence," reversal was warranted only upon a finding of plain error).

This court has held that the failure to give contemporaneous jury instructions regarding the permissible uses of Rule 404(b) evidence does not require reversal where the district court delivers the proper instructions before the jury deliberates. *Miller*, 115 F.3d at 366 (affirming Miller's conviction despite the lack of contemporaneous instructions where "[p]rior to the jury's deliberations, the trial court correctly instructed it regarding the limited purpose" for which the evidence could be used). Here, the district court instructed the jury regarding the proper use of Arnold's testimony along with the other instructions given at the end of the case. In accordance with *Miller*, reversal is warranted only if the content of the Rule 404(b) instructions ultimately presented to the jury was erroneous.

The instructions that were given tracked this circuit's pattern jury instructions, with one exception. Before telling the jury how it could use the prior-drug-sale evidence, the district court failed to say the words "If you find the defendant did those acts" or something substantially similar. We conclude that the omission of such words was not reversible error in this case because the jury was reminded in three different sentences of the Rule 404(b) instructions to consider Arnold's

testimony only for the limited purposes for which it was offered and not on the question of Matthews's guilt of the charged crimes. ("You cannot consider this testimony as evidence that the defendant committed the crime that he's on trial for now;" "Do not consider it for any . . . purpose[s]" other than on the issues of knowledge and intent;" and "Remember that the defendant is only on trial here for the crimes charged in . . . the indictment, not for the other acts.")

Given these extensive warnings to the jury as to the proper use of the evidence, the omission of the words telling the jury that it had the authority to decide whether the prior drug sales actually occurred did not constitute reversible error. Matthews, moreover, has failed to demonstrate how the omission of these words changed the outcome of the proceedings. Because the Arnold testimony was properly admitted under Rule 404(b) and the district court did not err in instructing the jury as to the proper uses of the evidence, Matthews's claims relating to the jury instructions fail.

## D.    The propriety of Matthews's sentence

Matthews argues, and the government concedes, that this court's post-*Booker* cases require us to vacate his sentence and remand the case to the district court for resentencing. *See United States v. Barnett*, 398 F.3d 516, 529 (6th Cir. 2005) (holding that sentencing under the mandatory Guidelines regime creates a presumption of prejudice that the government must rebut with "clear and specific evidence that the district court would not have . . . sentenced the defendant to a lower sentence" if it had treated the Guidelines as advisory ). No such evidence has been presented in this case. We therefore vacate Matthews's sentence and remand for resentencing consistent with *Booker*.

## III.    CONCLUSION

For all of the reasons set forth above, we **AFFIRM** Matthews's convictions, but **VACATE** his sentence and **REMAND** the case for resentencing in accordance with *Booker*.