RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0372P (6th Cir.)
File Name: 01a0372p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

TERRY L. PEVELER,
       *Petitioner-Appellant,*

       *v.*

UNITED STATES OF AMERICA,
       *Respondent-Appellee.*

No. 99-6707

Appeal from the United States District Court
for the Western District of Kentucky at Owensboro.
Nos. 93-00014; 96-00112—Jennifer B. Coffman,
District Judge.

Submitted: September 14, 2001

Decided and Filed: October 17, 2001

Before: DAUGHTREY, GILMAN, and GIBSON, Circuit
Judges.[*]

_____

[*] The Honorable John R. Gibson, Senior Circuit Judge of the United
States Court of Appeals for the Eighth Circuit, sitting by designation.

1

———————————

**COUNSEL**

**ON BRIEF:** Patrick J. Bouldin, ASSISTANT FEDERAL PUBLIC DEFENDER, Louisville, Kentucky, for Appellant. Terry M. Cushing, Marisa J. Ford, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellee.

———————————

**OPINION**

———————————

RONALD LEE GILMAN, Circuit Judge.  Terry Peveler pled guilty in 1994 to five counts of illegal drug trafficking and one count of using or carrying a firearm in relation to a drug trafficking crime.  After exhausting his direct appeals, Peveler filed a petition under 28 U.S.C. § 2255 to seek relief from his conviction and sentence in the United States District Court for the Western District of Kentucky.  He argued in his petition that his guilty plea to the firearm count was not entered into voluntarily and intelligently, so that his subsequent conviction and sentence violated his rights under the Due Process Clause of the Fifth Amendment.  Holding that Peveler had procedurally defaulted his due process claim, the district court denied Peveler's request for relief from his conviction and sentence on the firearm count.  Peveler now appeals.  For the reasons set forth below, we **AFFIRM** the judgment of the district court.

**I. BACKGROUND**

**A.   Factual background**

This case involves the actions of Terry Peveler and four of his codefendants.  In September of 1992, the Kentucky State Police and the police department in Livermore, Kentucky began investigating Peveler and his codefendants for suspected drug trafficking.  This investigation commenced after a confidential source informed both law enforcement

1992 and December 18, 1992.  *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) ("Solemn declarations in open court carry a strong presumption of verity.").  Peveler counters by arguing that he did not plead guilty to these two counts, but instead attempted to enter an *Alford* plea.  Such a plea allows the defendant to maintain his innocence while agreeing to forego his right to a trial.  *North Carolina v. Alford*, 400 U.S. 25, 37 (1970) ("An individual accused of crime may voluntarily, knowingly, and understandingly consent to the imposition of a prison sentence even if he is unwilling or unable to admit his participation in the acts constituting the crime.").  The record, however, provides no support for Peveler's contention that he attempted to enter an *Alford* plea.

**III. CONCLUSION**

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.

the demeanor of the persons who testified in court, and to determine all issues of credibility.") (citing Fed. R. Civ. P. 52(a)). In the present case, we find no compelling reason to second-guess the magistrate judge's decision to credit Blanford's testimony, a decision that was adopted by the district court.

Although Blanford received compensation and the dismissal of his criminal charge in exchange for his cooperation with the government, this does not necessarily render his testimony unreliable, particularly where his testimony was corroborated by the drugs and firearms recovered during the search of Peveler's trailer. *United States v. Hendricks*, No. 91-5796, 1992 WL 44737, at *3 (6th Cir. Mar. 10, 1992) (unpublished table decision) (holding that the district court did not clearly err in crediting the testimony of a cooperating government witness where his testimony was substantiated at least in part by other evidence). The magistrate judge further acknowledged that Blanford did not initially give Cobb and Brownd a completely accurate account of Peveler's cocaine packaging activities on January 22, 1993, but pointed out that Blanford later came forward on his own and corrected his earlier inaccurate statement. Moreover, the magistrate judge recognized that "there are some minor inconsistencies in Blanford's testimony when it is compared to earlier testimony given by [Cobb and Brownd]." The magistrate judge, however, reasonably attributed these inconsistencies to the fact that Cobb and Brownd gave their testimony in 1994, approximately five years before Blanford testified at the hearing on whether Peveler could establish his actual innocence.

Peveler finally argues that the magistrate judge should have given more weight to Peveler's own testimony and that of his codefendant Gross when they testified that Peveler neither sold drugs to Blanford nor possessed any firearms. But the magistrate judge did not clearly err in discrediting Peveler's and Gross's testimony. Both Peveler and Gross are convicted felons, and Peveler's testimony is contradicted by his guilty plea to the two counts of drug trafficking on November 12,

agencies that Peveler was using and selling illegal drugs in Western Kentucky.

At approximately the same time as the investigation of Peveler commenced, Larry Blanford was arrested by Livermore Police Chief Charles Cobb for attempted theft of a motorcycle. Blanford agreed to serve as a confidential informant and to purchase drugs from Peveler in exchange for cash payments and the dismissal of his theft charge.

Pursuant to this arrangement, Blanford informed Cobb and Kentucky State Police Detective Charles Brownd that he purchased marijuana from Peveler on November 12, 1992 and again on December 18, 1992, and that he saw Peveler weigh and package various quantities of cocaine on January 22, 1993. Blanford reported seeing firearms openly displayed in the rooms of Peveler's trailer home where the marijuana sales took place in 1992 and further stated that he saw firearms in the closet of Peveler's bedroom where the cocaine packaging occurred in 1993. Based on the information provided by Blanford, warrants were issued to arrest Peveler and search his trailer. The search resulted in the recovery of 1.5 pounds of cocaine, 12 pounds of marijuana, and 4 firearms.

### B.   Procedural background

A federal grand jury returned an eleven-count indictment against Peveler and his codefendants in April of 1993. The indictment named Peveler in seven of the counts. Five of these counts charged Peveler with drug trafficking in violation of 21 U.S.C. § 841(a)(1). The other two counts charged Peveler with violating 18 U.S.C. § 924(c) by using or carrying a firearm in relation to drug trafficking crimes on November 12, 1992 and December 18, 1992. Peveler pled not guilty to all seven counts.

Shortly thereafter, Peveler filed a motion to suppress the evidence recovered from his trailer, contesting, among other things, whether the search was supported by probable cause. The district court referred the motion to a magistrate judge for a report and recommendation. After a hearing, the magistrate

judge recommended that Peveler's motion be denied. This recommendation was adopted by the district court.

Peveler subsequently entered into a plea agreement with the government. The agreement required Peveler to plead guilty to a six-count superseding information that charged him with the same five drug trafficking counts included in the original indictment, but with only one count of violating § 924(c) by using or carrying a firearm in relation to a drug trafficking crime on January 22, 1993. In return, the government dismissed the counts relating to the firearm charges on November 12, 1992 and December 18, 1992, and further agreed to recommend a prison sentence and fine at the low end of the applicable range. Peveler entered his guilty plea in September of 1994, but preserved his right to appeal the district court's denial of his motion to suppress.

In December of 1994, Peveler received a 181-month prison sentence based on the six counts of the superseding information. The five drug trafficking counts accounted for 121 of these months, with the additional 60 months attributable to the firearm count.

Peveler then appealed the denial of his motion to suppress. This court affirmed the district court's judgment denying Peveler's motion. *United States v. Peveler*, No. 95-5155, 1995 WL 620961 (6th Cir. Oct. 19, 1995) (unpublished table decision). The Supreme Court denied Peveler's subsequent petition for a writ of certiorari. *Peveler v. United States*, 516 U.S. 1137 (1996).

Proceeding pro se, Peveler then filed a petition under 28 U.S.C. § 2255 for relief from his conviction and sentence on July 24, 1996. The petition contains various grounds for relief, but the present appeal concerns only Peveler's challenge to his conviction and sentence on the firearm count. Peveler argues in his petition that he pled guilty to the firearm count because he believed that he could be convicted under § 924(c) for storing firearms in close proximity to illegal drugs. But following his guilty plea, the Supreme Court held in *Bailey v. United States*, 516 U.S. 137, 144 (1995), that a

0.38 caliber pistol lying on a table in the living room during the sale. The December 18, 1992 sale, on the other hand, occurred in Peveler's bedroom. Blanford said that, during the sale, he saw a 0.38 caliber pistol on the headboard of Peveler's waterbed, a shotgun leaning against the wall, and a 9-millimeter pistol sitting on a dresser.

We agree with the magistrate judge that Blanford's testimony was sufficient to establish that Peveler used a firearm in connection with drug trafficking crimes on November 12, 1992 and December 18, 1992, as charged in the two firearm counts of the original indictment. Under the "active employment" interpretation of "using" a firearm as set forth in *Bailey*, "a firearm can be used without being carried, e.g., when an offender has a gun on display during a transaction . . . ." 516 U.S. at 146. The Court further stated that "the silent but obvious and forceful presence of a gun on a table can be a 'use.'" *Id.* at 148. Thus, displaying firearms while selling marijuana qualifies as using a firearm in relation to a drug trafficking crime.

Peveler argues, however, that the magistrate judge should not have credited Blanford's testimony. According to Peveler, Blanford lacks credibility because (1) he received both cash payments and the dismissal of a criminal charge in exchange for his cooperation with the government, (2) he lied to Cobb and Brownd about the timing of Peveler's cocaine packaging activities on January 22, 1993, and (3) his testimony conflicts with Cobb and Brownd's earlier testimony at the 1994 hearing on Peveler's motion to suppress.

We are generally reluctant to set aside credibility determinations made by the trier of fact, who has had the opportunity to view the witness on the stand and assess his demeanor. *Ramsey v. United Mine Workers of Am.*, 481 F.2d 742, 747 (6th Cir. 1973) ("Thus, however we might individually view the evidence if we were the triers of fact, it is clear that we are required to give great weight to the findings of the trial court which had the opportunity to see the witnesses, to weigh their evidence as it was presented, to view

Peveler next contends that the Double Jeopardy Clause of the Fifth Amendment and U.S. Sentencing Guidelines Manual § 2K2.4, cmt. n.2 (1994) (governing sentences for using a firearm in relation to a drug trafficking crime at the time Peveler pled guilty) prohibit the district court from requiring him to show his actual innocence regarding the two firearm counts in the original indictment. One of those counts charged Peveler with using a firearm in relation to the drug trafficking crime that took place on December 18, 1992. Peveler also received a two-level sentencing enhancement under U.S. Sentencing Guidelines Manual § 2D1.1(b)(1) (1994) for possessing a firearm during the same drug trafficking crime. He insists that the Double Jeopardy Clause and § 2K2.4 cmt. n.2 preclude a court from using the same conduct to impose both a sentencing enhancement under § 2D1.1(b)(1) and a sentence for using a firearm in relation to a drug trafficking crime. Peveler's argument, however, has no merit because the count that charged him with using a firearm in relation to the drug trafficking crime on December 18, 1992 was dismissed as part of his plea bargain. He was thus not sentenced on that count. His argument that he has been punished twice for the same conduct therefore fails.

Accordingly, we agree with the district court that, to excuse his procedural default, Peveler must prove his actual innocence regarding the firearm counts in the original indictment. To prove his actual innocence, Peveler must show that "it is more likely than not that no reasonable juror would have convicted him." *Bousley*, 523 U.S. at 623 (internal quotation marks and citations omitted). The district court, adopting the magistrate judge's recommendation, concluded that Peveler failed to meet this burden of proof.

We find no error in the district court's conclusion. At the hearing before the magistrate judge, Blanford testified that he purchased marijuana from Peveler on November 12, 1992 and again on December 18, 1992. Blanford said that the November 12, 1992 sale occurred in the living room of Peveler's trailer home. He further testified that there was a

conviction for using a firearm in relation to a drug trafficking crime can only arise if the defendant "actively employed" the firearm. Because the Supreme Court in *Bailey* reinterpreted a substantive provision of the criminal law, Peveler insists that the *Bailey* holding applies retroactively to his case. He further contends that the lack of evidence showing that he actively employed a firearm on January 22, 1993 requires that his conviction and sentence on the firearm count be vacated.

The district court referred Peveler's petition to the magistrate judge. In June of 1998, the magistrate judge recommended that the district court vacate Peveler's conviction and sentence on the firearm count. This recommendation was based on the government's concession that Peveler's guilty plea to the firearm count was no longer valid after *Bailey*. The government, however, withdrew its concession shortly after the Supreme Court issued its decision in *Bousley v. United States*, 523 U.S. 614 (1998) (holding that a petitioner belatedly raising a *Bailey* challenge to his guilty plea for violating § 924(c) must show "cause and prejudice" to avoid procedural default, or else demonstrate his actual innocence with regard to the § 924(c) charge and any other more serious charges dismissed during plea bargaining). Seeking reconsideration of the magistrate judge's recommendation, the government argued that *Bousley* limited Peveler's ability to challenge his firearm conviction.

The government insisted that Peveler had procedurally defaulted his due process claim by failing to assert it on direct appeal. Peveler could avoid this procedural default, according to the government, only by showing cause and prejudice for the default, or by demonstrating that he is actually innocent. Citing *Bousley*, the government further argued that, in terms of demonstrating actual innocence, Peveler had to show both that he did not actually commit the firearm offense charged in the superseding information (the count on which he pled guilty) and that he did not commit the firearm violations charged in the original indictment (counts that the government dismissed as part of Peveler's plea agreement). The government argued that Peveler committed the firearm

offenses charged in the original indictment even under *Bailey*'s interpretation of § 924(c).

Peveler could prevail on his due process claim, the district court agreed, only by showing his actual innocence regarding the firearm counts in both the superseding information and the original indictment. It then remanded the issue to the magistrate judge for a recommendation regarding whether Peveler was actually innocent of the firearm charges.

The magistrate judge conducted an evidentiary hearing in July of 1999. At the outset of the hearing, the government conceded that Peveler is actually innocent of the firearm charge in the superseding information. The hearing therefore focused on whether Peveler had committed the firearm charges contained in the original indictment; that is, whether Peveler used or carried a firearm in relation to drug trafficking crimes on November 12, 1992 and December 18, 1992.

Blanford, Peveler, and Peveler's codefendant Jamie Gross testified at the hearing before the magistrate judge. Both Peveler and Gross denied Peveler's guilt on the firearm charges in the original indictment. Blanford testified, however, that he saw firearms lying out in the open when purchasing marijuana from Peveler on November 12, 1992 and December 18, 1992. Crediting Blanford's testimony, the magistrate judge found that Peveler was not actually innocent on the two firearm charges in the original indictment because the firearms were displayed, and therefore actively employed, during the marijuana sales. The magistrate judge thus recommended that Peveler's request for relief from his conviction and sentence on the firearm count in the superseding information be denied. Overruling Peveler's objections, the district court adopted the magistrate judge's recommendation. This timely appeal followed.

(6th Cir. 1991) ("Issues not presented to the district court but raised for the first time on appeal are not properly before the court."). Moreover, even if the argument had been properly preserved, it lacks merit. At the time Peveler pled guilty, a second violation for using a firearm in relation to a drug trafficking crime carried with it a mandatory minimum sentence of 20 years in prison. 18 U.S.C. § 924(c)(1)(C)(i) (now 25 years following a 1998 amendment). The two firearm counts in the original indictment, when viewed in combination, are thus "more serious" than the one firearm count in the superseding information.

Peveler nevertheless maintains that the district court should not have required him to show his actual innocence on the two firearm counts in the original indictment, because the five-year statute of limitations applicable to those counts expired in 1997. 18 U.S.C. § 3282 (establishing a five-year statute of limitations for noncapital federal crimes). But, once again, Peveler has waived this argument by not raising it in the court below. *J.C. Wyckoff & Assocs., Inc.*, 936 F.2d at 1488. In any event, Peveler bases this argument on his mistaken belief that the district court punished him for committing the two firearm offenses charged in the original indictment. The district court, however, did not punish Peveler on those counts. Instead, consistent with *Bousley*, the district court required Peveler to demonstrate his actual innocence of the firearm charges in the original indictment as a basis to avoid the procedural default on his due process challenge to the firearm count in the superseding information. *Bousley* requires such a showing to address the unfairness of allowing a petitioner to raise a procedurally defaulted challenge to a sentence he bargained for, while escaping punishment for dismissed counts that he actually committed. *United States v. Lloyd*, 188 F.3d 184, 188-89 n.11 (3d Cir. 1999) ("The apparent reason for requiring a showing of innocence on dismissed charges is that those charges often cannot be reinstated due to the running of the five-year statute of limitations.").

## II. ANALYSIS

### A. Standard of review

In reviewing the denial of a 28 U.S.C. § 2255 petition, this court "applies a *de novo* standard of review of the legal issues and will uphold the factual findings of the district court unless they are clearly erroneous." *Hilliard v. United States*, 157 F.3d 444, 447 (6th Cir. 1998) (citing *Gall v. United States*, 21 F.3d 107, 109 (6th Cir. 1994)).

### B. Peveler procedurally defaulted his due process challenge to his conviction and sentence on the firearm count in the superseding information

Peveler maintains that, in light of *Bailey v. United States*, 516 U.S. 137 (1995), he did not voluntarily and intelligently plead guilty to the firearm count in the superseding information. He therefore insists that due process requires that his conviction and sentence on the firearm count be vacated. Peveler's claim has a substantive basis. First, the Supreme Court, in *Bousley v. United States*, 523 U.S. 614, 620-21 (1998), held that *Bailey* applies retroactively, such that a petitioner may rely on *Bailey* in collaterally challenging whether his earlier guilty plea to using a firearm in relation to a drug trafficking crime comports with due process. Second, the government has conceded that, under *Bailey*'s interpretation of "using" a firearm in relation to a drug trafficking crime, Peveler did not commit the firearm offense charged in the superseding information.

A due process challenge based on *Bailey*, however, must first be raised by the petitioner on direct appeal. *Bousley*, 523 U.S. at 621 ("[T]he voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review."). Otherwise, the claim is procedurally defaulted. *Id.* A procedurally defaulted claim, absent a showing of cause and prejudice or actual innocence, cannot give rise to relief under § 2255. *Id.* at 622.

---

(citations omitted). The "hurdle" Peveler faces in excusing his procedural default is "intentionally high . . . , for respect for the finality of judgments demands that collateral attack generally not be allowed to do service for an appeal." *Elzy v. United States*, 205 F.3d 882, 884 (6th Cir. 2000).

Peveler argues that he has demonstrated "cause" by raising his due process claim "at the earliest possible stage . . . ," namely, after the Supreme Court issued its decision in *Bailey*. A claim "so novel that its legal basis is not reasonably available to counsel" may establish cause for procedural default. *Bousley*, 523 U.S. at 622 (quotation marks omitted). In *Bousley*, however, the Supreme Court held that its decision in *Bailey* was not sufficiently novel to excuse the petitioner's failure to raise a due process challenge to his firearm conviction on direct appeal. *Id.* The Court explained that, "at the time of petitioner's plea, the Federal Reporters were replete with cases involving challenges to the notion that 'use' is synonymous with mere 'possession' [for purposes of using a firearm in relation to a drug trafficking crime]." *Id.*

To excuse his procedural default, then, Peveler must demonstrate his "actual innocence" with regard to both the firearm count in the superseding information and any other "more serious" counts dismissed during plea bargaining. *Id.* at 624. Part of his burden is satisfied by the government having conceded that Peveler is actually innocent of the firearm violation charged in the superseding information. But the district court held that Peveler failed to demonstrate his actual innocence on the two dismissed firearm counts in the original indictment. With regard to the required showing of actual innocence, "[i]n cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing must also extend to those charges." *Id.*

Peveler now argues that the two firearm counts in the original indictment are not "more serious" than the firearm count in the superseding information. But he did not raise this argument below, and it is therefore waived. *J.C. Wyckoff & Assocs., Inc. v. Standard Fire Ins.Co.*, 936 F.2d 1474, 1488

In the present case, the district court held that Peveler procedurally defaulted his due process claim. We agree, because Peveler never raised his due process claim when he appealed his conviction on the firearm count. He instead limited his appeal to the district court's denial of his motion to suppress. Although Peveler maintains that he raised his due process claim in his petition for a writ of certiorari to the Supreme Court, he cannot avoid procedural default by asserting the claim in such a manner. Absent exceptional circumstances, the Supreme Court will not address claims raised for the first time in a petition for a writ of certiorari. *United States v. Alvarez-Sanchez*, 511 U.S. 350, 360 n.5 (1994) (finding no exceptional circumstances to warrant review of a Fourth Amendment claim never previously raised).

The Court has found such exceptional circumstances where a claim challenges the Court's jurisdiction. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230-31 (1990) (stating that "we are required to address the issue [of jurisdiction] even if the courts below have not passed on it . . . and even if the parties fail to raise the issue before us.") (citation omitted). Another exceptional circumstance was found where the Court was presented with the question of whether a remedy is available directly under the Constitution if a plaintiff's allegations could also support a suit against the United States under the Federal Tort Claims Act. *Carlson v. Green*, 446 U.S. 14, 17 n.2 (1980) (addressing the merits where the parties agreed that the Court should decide the issue, where the issue was important and recurring, and where the same issue was properly raised in another pending petition for certiorari). We find no equivalent set of exceptional circumstances in the present case, and therefore hold that Peveler has procedurally defaulted his due process claim.

Peveler relies heavily on the Second Circuit's decision in *Napoli v. United States*, 32 F.3d 31 (2d Cir. 1994), to support the opposite conclusion. We, of course, are not bound by a decision from another circuit. *In re Ann Arbor R.R. Co.*, 623 F.2d 480, 482 (6th Cir. 1980) (recognizing this principle).

Moreover, our holding that Peveler has procedurally defaulted his due process claim in no way conflicts with the Second Circuit's decision in *Napoli*.

In *Napoli*, Harold Fishman and Joseph Napoli filed 28 U.S.C. § 2255 petitions seeking relief from their convictions under the Racketeer Influenced and Corrupt Organizations Act (RICO). Relying on a Supreme Court decision issued after their convictions, Fishman and Napoli argued that the trial court improperly instructed the jury that it could find them guilty of violating RICO without determining that they had participated in the management or control of a corrupt enterprise. Neither Fishman nor Napoli had challenged this instruction in their appeals as of right. Both, however, contended that the instruction was defective in their petitions for a writ of certiorari to the Supreme Court. The district court held that Fishman's and Napoli's challenge to the jury instruction was not procedurally barred, but concluded that giving the instruction was at most harmless error. Fishman and Napoli subsequently appealed to the Second Circuit.

The Second Circuit did not, contrary to Peveler's argument, agree with the district court that Fishman and Napoli had preserved their claims by raising them for the first time in their petitions for a writ of certiorari. Instead, the Second Circuit held that, even *assuming* Fishman and Napoli had preserved their challenge to the jury instruction, any error in the instruction would not justify granting relief under § 2255. *Napoli*, 32 F.3d at 35-36. The Second Circuit thus never reached the issue of whether Fishman and Napoli procedurally defaulted their claims. Our holding that Peveler has procedurally defaulted his due process claim therefore does not conflict with *Napoli*.

## C. Peveler offers no valid excuse for his procedural default

Based on Peveler's procedural default, "the claim may be raised [in a petition under 28 U.S.C. § 2255] only if [Peveler] can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" *Bousley*, 523 U.S. at 622